# UNITED STATES *v.* BRITTON.

ON CERTIFICATE OF DIVISION OF OPINION FROM THE EASTERN
DISTRICT OF MISSOURI.

Decided April 2d, 1883.

*Fraud—Indictment—National Banks.*

1. In an indictment for a conspiracy under § 5440 Rev. Stat., the conspiracy must be sufficiently charged : it cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy.

2. The procuring by two or more directors of a national banking association of a declaration of a dividend by the bank at a time when there are no net profits to pay it, is not a wilful misappropriation of the money of the association within the provisions of § 5204 Rev. Stat. ; and an allegation of a conspiracy to do that act is not an allegation of a conspiracy to commit an offence against the United States.

Indictment against two directors of a national bank for conspiracy to defraud the bank.

Section 5440 of the Revised Statutes declares :

" If two or more persons conspire . . . to commit any offence against the United States, . . . and one or more of such parties do any act to effect the object of the conspiracy, all

the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars, and to imprisonment not more than two years."

Section 5209 of the Revised Statutes provides as follows:

"Every president, director, cashier, teller, clerk or agent of any." banking "association who embezzles, abstracts, or wilfully misapplies any of the moneys, funds or credits of the association, . . . or who makes any false entry in any book, report or statement of the association, with intent in either case to injure or defraud the association, or any company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of such association, . . . shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The defendants were indicted under section 5440 of the Revised Statutes. The indictment contained two counts. The first count charged, in substance, as follows: That Britton was the president and a director of the National Bank of the State of Missouri, in St. Louis, a national banking association organized under the act of Congress, and that Bates was vice-president and a director of the same association; that Britton and Bates, while president and vice-president respectively, and directors of said association, did conspire with each other to wilfully misapply a large sum of money belonging to and the property of said association, to wit, the sum of $87,500, by means of procuring to be made, on June 30th, 1876, by the said association, a dividend of three and one-half per centum on the capital stock of the association, which said dividend was to be greater, in the sum of $87,500, than the net profits of said association on hand after deducting from said net profits the amount of the losses and bad debts of the association existing on said 30th day of June.

The acts done to effect the object of the conspiracy were, in substance, alleged as follows: That Britton falsely represented to one Walsh, who, on June 30th, 1876, was also a director of the association, that the net profits of the association were on

that day sufficient in amount to warrant and permit the declaration of said dividend, and did thereby induce the said Walsh to assent to the declaration of said dividend, and to join, on said June 30th, as such director, with Britton and Bates, directors as aforesaid, in the declaration of said dividend, they, the said Britton, Bates and Walsh, constituting a majority in number of the directors of said association; that, to effect the object of said conspiracy, Britton did further, upon the said June 30th, cause and procure to be made by one Edward P. Curtis, in the record of the proceedings of the board of directors of said association, the following entry : " St. Louis, June 30th, 1876.    Present, Messrs. Britton and Walsh, Mr. Bates assenting on the 29th.    Ordered that a dividend of 3½ per cent. be declared payable on the 10th proximo, and that the transfer books be closed till that date.    Attest, Edward P. Curtis, cashier; " that afterwards, on July 8th, 1876, in further pursuance of and to effect the object of said conspiracy, the said Britton and Bates did each receive from said association, and convert to his own use, a large sum of money, the said Britton the sum of $5,397, and the said Bates the sum of $4,112.

The second count was similar to the first, except that after averring that said dividend so to be declared on said June 30th, 1876, was to be false and fraudulent, it was added that there was on said June 30th, 1876, due and owing to said association certain debts, specifying them, amounting in the aggregate to the sum of $797,214.29; that upon such debts there was owing to the association, then past due and unpaid, interest for a period of six months; that said debts were " not well secured and in process of collection," and their aggregate amount was largely in excess of the net profits and purported net profits of said association then on hand, as said Britton and Bates then well knew, and that said debts were bad debts within the meaning of section 5204 of the Revised Statutes, as said Britton and Bates then well knew.

The defendants demurred to the indictment.    Upon the hearing of the demurrer, the judges of the circuit court were divided in opinion upon the following questions :

1. Whether, under section 5209 of the Revised Statutes of the United States it was necessary to aver that the alleged conspiracy was entered into with intent to injure and defraud; and whether the several counts in this indictment not containing the said allegations are good and sufficient in law.

2. Whether it was necessary in this indictment, in addition to the allegations charging the conspiracy to wilfully misapply certain funds and property of the association, by means of procuring to be made by the board of directors a dividend, as alleged in the indictment, to further allege that said dividend was in pursuance of said conspiracy declared and made; and, if so, whether the same is sufficiently charged therein, and whether it was also necessary to allege that said dividend was fraudulent when declared, and also when paid.

3. Whether, under § 5209 of the Revised Statutes of the United States, it was necessary in this indictment to charge that the funds alleged to have been misapplied had been previously intrusted to the possession of the defendants.

4. Whether the indictment in this case alleges with sufficient certainty that the bank had no net profits out of which to declare and pay the dividend alleged to have been fraudulent.

5. Whether the said defendants, as directors of the said banking association, are liable to the penalties provided by the said § 5209 upon proof, that they, as such directors, wilfully voted for the declaration of a dividend, knowing that there were no net profits out of which to pay the same; and if liable, must the indictment charge that such dividend was ordered or voted for with intent thereby to defraud the association or other persons.

*Mr. Assistant Attorney-General Maury* for the United States. —I. It is asked substantially, whether the absence from any count of the averment that the conspiracy was entered into with intent to injure and defraud is fatal to the indictment. There are only two counts in the indictment, and each of them avers that the defendants, as directors of the bank, did "conspire, combine, confederate, and agree together to wilfully misapply, *with intent then and there to injure and defraud the said asso-*

*ciation and certain persons to the jurors aforesaid unknown*, a large sum," &c. Seeing, then, that each count *does* contain this averment, *quæstio cadit.*—II. It is next asked whether the dividend, which was the object of the conspiracy, should be alleged to have been made, and if so, whether the same is sufficiently charged, and whether it was also necessary to allege that the dividend was fraudulent when declared. It is submitted that it was not necessary to make any averment in the indictment of the consummation of the object of the conspiracy. The offence charged is a *conspiracy to do an unlawful act.* Whether the act was done or not is quite immaterial, under this indictment, there being no handle to say that the conspiracy was merged in the offence resulting from the success of the conspiracy. Whart. Cr. L. section 1346 (8th ed.); *People* v. *Richards,* 1 Manning (Mich.), 216; *People* v. *Mather,* 4 Wend. 229. But if it was necessary, the averment made in that behalf is entirely sufficient. The indictment also alleges with certainty that the dividend was fraudulent when declared and when paid, all which, however, is, we submit, surplusage, because the offence charged is a conspiracy to declare and afterwards to pay a fraudulent dividend. It is the spirit that animated the conspirators, and not the consequences of the conspiracy, that constitutes the offence. Neither is it at all material, under this indictment, whether the dividend declared was or not paid out of net earnings, for this, if so, was entirely compatible with a conspiracy to pay an illegal dividend. How can this court say, looking at the indictment, and it can look no further, that in the state of things mentioned the conspiracy could not have existed?—III. Was it necessary under section 5209 to charge that the funds alleged to have been misapplied had been previously intrusted to the possession of the defendants? It is submitted that inasmuch as the offence charged is a combination or conspiracy to misapply the bank's funds by declaring and paying a fraudulent dividend, the consummation of those objects of conspiracy is not an element of the offence, and therefore it was not necessary to allege that the defendants had been previously intrusted with the funds misapplied. The actual misapplication of funds was one offence and the conspiracy to

misapply them quite another. The first is an offence under § 5440, and the second under § 5209.—IV. The indictment alleges with sufficient certainty that the bank had no net profits, out of which to declare a dividend. As no dividend could be declared in such a state of things, it is not easy to see why a conspiracy to declare one is not indictable.—V. Whether it is enough to subject the defendants to the penalty of section 5209 to prove that they wilfully voted for the dividend, knowing there were no net profits, and if so, whether the indictment must charge that the dividend was ordered or voted for with intent to defraud the association or other persons. It is, perhaps, enough to say that no question as to the sufficiency of evidence can arise under the demurrer. The question here is as to the sufficiency of the indictment, and not as to the measure of proof necessary to sustain the indictment. The charge is that the defendants conspired to bring about the declaration and payment of a fraudulent dividend; that the dividend, the object of conspiracy, was in fact declared, and that the defendants took from the assets of the bank their shares and proportions of said fraudulent dividend—allegations which are of themselves sufficiently evincive of fraud upon the bank, its innocent shareholders and creditors, without any additional averment. But the indictment is not under section 5209, but under section 5440, which makes it penal to conspire to commit any offence against the United States. The offence charged is the unlawful combination to effect an illegal and fraudulent object, and the sufficiency of an indictment under section 5440 is not to be determined by the requirements for an indictment under section 5209.

*Mr. J. B. Henderson, Mr. Geo. H. Shields* and *Mr. Chester H. Krum* for the defendants.

MR. JUSTICE WOODS delivered the opinion of the court.

The offence charged in the counts of this indictment is a conspiracy. This offence does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there

must be an act done to effect the object of the conspiracy, merely affords a *locus penitentiæ*, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows as a rule of criminal pleading that in an indictment for conspiracy under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy. *Reg.* v. *King*, 7 Q. B. 782; *Commonwealth* v. *Shedd*, 7 Cush. 514.

The charge against the defendants is a conspiracy to wilfully misapply the funds of the association. It is alleged in the counts of this indictment that they, being directors, with intent to defraud the association, did conspire to wilfully misapply its moneys and funds by procuring to be declared by the association a dividend of its net profits, when there were no net profits sufficient in amount to pay it.

Such a dividend is forbidden by section 5204 of the Revised Statutes, which declares as follows:

"No association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital. If losses have at any time been sustained by any such association equal to or exceeding its undivided profits then on hand, no dividend shall be made; and no dividend shall ever be made by any association while it continues its banking operations, to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts. All debts due to any association on which interest is past due and unpaid for a period of six months, unless the same are well secured and in process of collection, shall be considered bad debts within the meaning of this section."

We are, therefore, to inquire whether the conspiracy entered into by and between the defendants to misapply the moneys of the association by procuring the declaration by the association of a dividend greater than the net profits of the association is a criminal offence against the United States.

There are no common-law offences against the United States, *United States* v. *Hudson*, 7 Cranch, 32; *United States* v. *Coolidge*, 1 Wheat. 415, and section 5204 does not of itself create any offence against the United States.

But it is contended on behalf of the United States that the procuring of a dividend to be declared by the association when there are no net profits to pay it is a wilful misapplication of the moneys and funds of the association, which is made an offence by section 5209 of the Revised Statutes, and that a conspiracy to commit this offence is made punishable by section 5440.

We think this construction of the statute is unwarranted, and that the indictment is based on a misconception of its provisions.

The indictment having charged a conspiracy between the defendants to misapply the moneys of the association, proceeds to aver by what means the misapplication was to be effected, namely, by procuring to be declared by the association a dividend when there were no nets profits to pay it. If procuring the declaring of such a dividend by the association is not a wilful misapplication of its funds by these defendants, then the indictment charges no offence. The declaring of a dividend by the association when there were no net profits to pay it is, in our judgment, not a criminal misapplication of its funds. It is an act done by an officer of the association in his official and not in his individual capacity. It is, therefore, an act of maladministration and nothing more, which, while it may subject the association to a forfeiture of its charter, and the directors to a personal liability for damages suffered in consequence thereof by the association or its shareholders, does not render them liable to a criminal prosecution. The act belongs to the same class as the purchase by a banking association of its own shares when not necessary to prevent a loss on a debt due it, which, in *United States* v. *Britton*, 107 U.S. 655, we held not to be a criminal misapplication of the funds of the association. If, therefore, the indictment had charged that the defendants had misapplied the funds of the association by themselves declaring a dividend, when there were no net profits to pay it, it would not

have charged a criminal act, much less when it merely charges that they conspired to procure the association to declare a dividend under like circumstances. So that it appears on the face of the indictment that the conspiracy charged was not a conspiracy to commit an offence against the United States.

We therefore answer the first branch of the fifth question propounded to us by the judges of the circuit court in the negative.

Our opinion is that under this indictment the defendants are not "liable to the penalties provided by section 5209, upon proof that they, as such directors, wilfully voted for the declaration of a dividend, knowing there were no net profits out of which to pay the same," because this is not the offence with which they are charged in the indictment. And as they are charged with a conspiracy to do an act which is not an offence, we are of opinion that no penalties could be inflicted on them under the indictment.

As the answer we have given to this question is fatal to the indictment, it is not necessary for us to answer the other questions sent to us by the judges of the circuit court.

*Answer accordingly.*

In case No. 410, *The United States* v. *James H. Britton* and *Barton Bates*, on certificate of division in opinion from the same court, the indictment contained five counts, all substantially similar to the counts in case 409, just disposed of. What we have said in reference to the indictment in case 409 applies to the indictment in this case. As the indictment is bad, and no good indictment can be framed upon the facts as they appear therein, it is unnecessary and we decline to answer the specific questions submitted to us by the judges of the circuit court. *United States* v. *Buzzo*, 18 Wall. 125.