## UNITED STATES v. McKINLEY et al.

(Circuit Court, D. Oregon. November 16, 1903.)

No. 2,802.

1. CONSPIRACY—PUBLIC LANDS—FRAUDULENT HOMESTEAD—ENTRY—INDICTMENT.
   Where an indictment for conspiracy to deprive the government of land by reason of a fraudulent homestead entry alleged that the lands sought to be acquired were "public lands," and that defendants had conspired to defraud the United States out of a portion of such land, it was not demurrable for failure to allege other facts showing that the land was in fact public land or subject to homestead entry.

2. SAME.
   Since it was not necessary to a conviction for conspiracy to deprive the United States of public lands by a fraudulent homestead entry that it should be proved that the conspiracy was with reference to any particular tract of land or to land within the district, it was not necessary that the indictment particularly describe the land affected by the conspiracy.

3. SAME.
   Where an indictment for conspiracy to defraud the government out of public lands by a fraudulent homestead entry alleged facts showing that the conspiracy in fact succeeded, and that by reason of fraudulent and forged proofs the land sought to be acquired was actually patented by the government in pursuance of such proofs, the indictment was not objectionable for failure to allege that the overt acts of the conspirators in furtherance of the conspiracy were effective in accomplishing its object.

On Demurrer to Indictment for Violation of Section 5440.

John H. Hall, U. S. Atty.

Thomas O'Day and F. P. Mays, for defendants.

BELLINGER, District Judge. It is contended in support of the demurrer that the indictment does not allege all the facts necessary to constitute the offense charged; that it does not appear that the land which the conspiracy was formed to obtain by means of homestead applications is public land or subject to homestead entry; that the government could not be defrauded of any of its land unless the court can say where the land is located, and unless it is averred that the land is owned by the United States and is subject to homestead entry; that the overt acts alleged to have been done do not appear to be in furtherance of the conspiracy, inasmuch as they do not appear to be effective to accomplish its object.

The words "public lands" have a well-understood meaning. They describe such lands belonging to the United States as are subject to sale or disposal under general laws. Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769. The defendants are charged with conspiracy to defraud the United States out of a portion of such lands. It is not necessary that the conspiracy should have been with reference to a particular tract of land, or to land within the district. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698.

The case of Dealy v. United States, 152 U. S. 543, 14 Sup. Ct. 682, 38 L. Ed. 545, is relied upon by the defendants to support their contention that at least the county where the lands intended to be

acquired are situated should be stated, and that it should appear that such lands are subject to homestead entry. In that case the court says:

"There is nothing more definite than this: Large tracts of land in the county of Rolette, state of North Dakota, such lands being public lands of the United States, open to entry under the homestead laws at the local land office of the United States at Devil's Lake City, in said state. It is true no tract is named by number of section, township, and range, and the language is broad enough to include any or all the public lands of the United States situate within that county and subject to homestead entry at that land office. But manifestly the description in the indictment does not need to be any more definite and precise than the proof of the crime. In other words, if certain facts make out the crime, it is sufficient to charge those facts, and it is obviously unnecessary to state that which is not essential. Can it be doubted that if these defendants entered into a conspiracy to defraud the United States of public lands, subject to homestead entry, at the given office in the named county, the crime of conspiracy was complete even if no particular tract or tracts were selected by the conspirators? It is enough that their purpose and their conspiracy had in view the acquiring of some of those lands, and it is not essential to the crime that in the minds of the conspirators the precise lands had already been identified."

It does not follow that because the indictment in the case cited was held sufficient anything less than this would be bad. It is a crime under the statute to conspire to defraud the United States of public land wherever situated. This constitutes a crime, and it is sufficiently described if enough appears to apprise the defendants of the precise nature of the charge against them, and the charge is so identified that any judgment rendered in the case may be pleaded in bar of a second prosecution for the same offense. Less particularity is necessary where the objects of the conspiracy have been accomplished, and the means employed have been described, than might otherwise be required. The conspiracy is fully described in the several overt acts by which its objects have been accomplished. If the conspiracy intended to employ "false and forged homestead papers and proofs," it does not necessarily follow that the conspirators had in mind only land subject to homestead entry. If they intended by such means to procure any lands, and the means were adequate to the end, the crime is complete.

It is argued that it should appear that the lands to be acquired were subject to homestead entry, since no other land can be acquired under the homestead laws. But there is no ground for the assumption that only lands subject to homestead entry can be acquired by false and forged homestead papers and proofs. The character of the means employed makes it possible by false proofs to make lands appear to be subject to homestead entry that are in fact not so. Mineral lands may be acquired as homestead by means of false affidavits and proofs that they are nonmineral. Those who employ false proofs do not have to concern themselves about the truth.

But why should there be argument as to whether the indictment contains enough to show that the conspirators were capable of accomplishing their object? The indictment shows that they did accomplish it.

It is argued that it should appear that the land to be acquired was surveyed, and that the necessary fees were paid upon the filing of the homestead application; otherwise it must be presumed that the attempted proceeding would fail, and if what was contemplated could not succeed there was no crime. Is it necessary to say that there is no presumption of that kind contrary to the facts alleged, which show that the intended fraud did succeed? And so of the forged final proof, which sets out a specific description of the land affected by legal subdivisions, but omits a meridian by which to locate it. The argument that this proof could not, by reason of the omission, be acted on in the land office, might be worth considering if it did not appear that it was received and acted upon by the land office, and was a means of accomplishing the fraud for which the conspiracy was formed. As suggested, it is idle to say "from this indictment the conspiracy could not succeed" when the indictment shows that it did succeed, and that success was phenomenal, in view of the fact that, while it is common knowledge that usually many months, and sometimes years, elapse after the approval of final proofs in the General Land Office at Washington before patent issues, these fraudulent cases seem to have been railroaded through that office, since patents were issued on the thirteenth day after such approval.

The demurrer to the indictment is overruled.